**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JEFFREY H.

                      **Plaintiff,**                      22-CV-00571-HKS

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

On December 30, 2019, plaintiff, at the age of 43, protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of June 9, 2019. Dkt. #6, pp. 17, 141-142, 171-179.[1] Plaintiff alleged he was disabled due to a fractured vertebrae/back injury. Dkt. #6, p. 172. Plaintiff's claim was denied initially, Dkt. 6, pp. 59, 78-83, and on reconsideration. Dkt. #6, pp. 72, 85-90.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff requested a hearing, and a telephonic hearing was held on February 12, 2021, before Administrative Law Judge ("ALJ") Mark Solomon. Dkt. #6, pp. 32-49. Plaintiff appeared with counsel.

Plaintiff testified that he has not worked since June 9, 2019, the date that he injured his back in an ATV accident. Dkt. #6, pp. 37, 240. He testified that he was undergoing pain management, lives alone, and is able to take care of himself, although he experiences pain. Dkt. #6, pp. 38-39. He also testified that he cooks daily, does laundry, goes shopping, but he does not drive because he lost his license due to DWIs. *Id.* He can sit for approximately 45 minutes, but he then needs to get up and stretch due to low back pain. Dkt. #6, p. 39.

Plaintiff further testified that he could stand for approximately one hour, and he takes pain medications three times a day, although they do not completely alleviate his symptoms. Dkt. #6, p. 39.

As to daily activities, plaintiff testified that he gets up and watches television and uses the computer. Dkt. #6, p. 41. He does not require an assistive device to walk. *Id.* He stated that once his lower back gets aggravated, the pain becomes "severe and debilitating." Dkt. #6, p. 41.

On examination by his counsel, plaintiff testified that he tries to avoid lifting due to the pain. Dkt. #6, p. 42. When he takes an Uber to get groceries, he has to use his

legs to lift the bags into the Uber and into his house. *Id.* He needs to lay down due to his back pain a few times each day. *Id.*

Plaintiff further testified that if he were to work as an auto mechanic or in a job ordering parts and organizing the shop, he would have problems with pain and lack of mobility. Dkt. #6, p. 43. He did not think he could sit for eight hours at a desk. *Id.*

The ALJ next questioned plaintiff about his work history. Plaintiff testified that he worked at an auto repair business for fifteen years prior to his accident. Dkt. #6, p. 44. He started as a mechanic, but he had been the shop manager for ten years. *Id.* As manager, he contacted customers, ordered parts, and performed electronic diagnostic and specialty alignment on higher-end cars. *Id.*

Next, the ALJ heard testimony from Andrew Vaughn, a vocational expert ("VE").The VE testified that plaintiff's previous position as an auto mechanic would constitute medium work, while his job as a shop manager supervisor would be light work, but was medium as previously performed by plaintiff. Dkt. #6, p. 45.

The ALJ then asked the VE to assume that plaintiff could perform light work; sit/stand/walk six hours in an eight-hour day, with normal breaks; lift/carry up to 20 pounds occasionally and 10 pounds frequently; and occasionally climb, balance, stoop, kneel, crouch, and crawl. Dkt. #6, p. 46. Using those assumptions, the VE testified that plaintiff could perform his past work as an automobile supervisor as generally performed. *Id.*

The ALJ next asked the VE to assume that plaintiff would need to switch positions every three minutes, with the same assumptions in the first hypothetical, also considering that he has a high school diploma and the past work to which he testified. *Id.* The VE opined that under those circumstances, plaintiff would be able to perform the light work jobs of cashier, storage facility rental clerk, and information clerk. *Id.*

Finally, the VE testified that plaintiff would need to be able to sit/stand/walk for six hours a day, with up to 15% off-task time and no more than one absence a month, to maintain full-time competitive employment. Dkt. #6, pp. 46-47.

On cross-examination by plaintiff's counsel, the VE testified that the tolerance for breaks in the jobs described would be two 15-minute breaks—one on the morning and one in the afternoon—and 30 minutes for lunch. Dkt. #6, p. 47. He further testified that taking breaks to lie down for 10 minutes every hour would not be tolerated. Dkt. #6, p. 48.

On February 24, 2021, the ALJ issued an unfavorable decision. Dkt. #6, pp. 17-26. The Appeals Council denied review on May 27, 2022, Dkt. #6, pp. 5-10, and this action followed.

## DISCUSSION AND ANALYSIS

### **Legal Standards**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R.

§ 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since June 9, 2019, the alleged onset date; (2) plaintiff has the severe impairment of T-12 burst fracture with two surgeries; (3) plaintiff's impairments do not meet or equal any listed impairment; (4) since June 9, 2019, plaintiff retained the RFC to perform the full range of light work[2] with some postural limitations[3] (5) plaintiff is able to perform his past relevant work as a garage supervisor at medium level, and, in the alternative, plaintiff is capable

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[3] The ALJ included in the light-work RFC the limitations of sitting for 6 hours; stand/walk a total of 6 hours; lift/carry 20 pounds occasionally and 10 pounds frequently; and occasionally climb, balance, stoop, kneel, crouch, and crawl. Dkt. #6, p. 20.

working as a cashier, rental clerk, and information clerk; (6) plaintiff was not, therefore, disabled within the meaning of the SSA from June 9, 2019 to the date of the ALJ's decision. Dkt. #6, pp. 19-26.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more

persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**
#### *Listing 1.04(A)*

Plaintiff first argues that the ALJ erred at step three of the sequential analysis by finding that his impairments did not meet Listing 1.04(A) and by failing to explain that conclusion. Dkt. #8-1, pp. 11-16.

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Casillas v. Comm'r of Soc. Sec.*, 1:19-CV-00629 EAW, 2020 WL 4283896, at *3 (W.D.N.Y. July 27, 2020) (citation and internal quotation marks omitted). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Id.* "If a claimant's impairment manifests

only some of those criteria, no matter how severely, such impairment does not qualify." *Id.*

The ALJ should explain why the claimant failed to meet or equal the listing, where "the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Id.* "However, [a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Id.*

To meet Listing 1.04(A)—disorders of the spine—a plaintiff must show proof of the following conditions:

1. A disorder of the spine, including but not limited to, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, and

2. Compromise of nerve root (including the cauda equina) or the spinal cord, and

3. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), and

4. Sensory or reflex loss, and if there is involvement of the lower back,

5. Positive straight-leg raising test in both the sitting and supine position.

*Julie Ann P. v. Comm'r of Soc. Sec.*, Case # 21-cv-06235-FPG, 2023 WL 6056460, at *2 (W.D.N.Y. Sept. 18, 2023) (citation and internal quotation marks omitted).

Furthermore, courts in this District accord "substantial deference" to an Acquiescence Ruling ("AR") regarding Listing 1.04(A). *Id.* at *3. *See also Casillas*, 2020 WL 4283896, at *4 n.2 ("This Court has previously held that, in the absence of a similar holding from the Second Circuit, it will afford this aspect of AR 15-1(4) substantial deference.") (citation omitted).

Specifically, in AR 15-1(4), "the SSA specified that the entire set of criteria [in Listing 1.04(A)] must be present at the same time on examination in order to meet the severity of Listing 1.04(A)." *Julie Ann. P.*, 2023 WL 6056460, at *2 (citation and internal quotation marks omitted). "In other words, when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's [condition] would not rise to the level of severity required by listing 1.04A." *Id.*

"Further, this level of severity—i.e., the simultaneity of the symptoms—must continue, or be expected to continue, for at least 12 months, in order for a disorder of the spine to meet the durational requirements of the Listing." *Id.* Unless both the severity and durational requirements are met, Listing 1.04(A) is not met. *Id.*

Here, plaintiff is correct that, while the ALJ mentioned Listing 1.04 at step three of his analysis, he did not explain his conclusion that it was not met. Dkt. #6, p. 20. Nonetheless, having reviewed the entire record, the Court concludes that it contains substantial evidence supporting that conclusion, such that remand is not warranted. *Casillas*, 2020 WL 4283896, at *3.

Although plaintiff suffered from a fractured vertebra—which satisfies the first of the Section A criteria—the record reflects that he never presented with the remaining necessary conditions simultaneously.

In his brief, plaintiff cites selectively to his medical records in attempt to piece together the required criteria. For example, he cites to records from the day of his ATV accident to argue that he presented with atrophy. Dkt. #6, p. 246. He cites to a post-operative visit in September 2019 during which he reported muscle weakness. Dkt. #6, p. 272. Similarly, he points to an MRI conducted in November 2019—after his first back surgery on June 13, 2019 but before his second surgery on January 10, 2020—as evidence of nerve root compression. *Id.*

However, none of plaintiff's medical records from the approximately year-and-a-half period following his accident show the presence of all required criteria during the same examination, nor does plaintiff point to any such evidence.

For example, plaintiff underwent a second surgery on January 10, 2020, to address his continued complaints of lower back pain. Dkt. #6, p. 480. In a post-operative examination on January 29, 2020, he had lower extremity strength of 5/5, although with some pain with straight leg raising on the right. Dkt. #6, p. 483. The doctor opined that plaintiff had some mild, post-operative inflammation for which he prescribed medication. *Id.*

In March 2020, plaintiff reported continuing pain in his right leg, but on examination he had no tenderness, lower extremity strength of 5/5, and intact sensation in his lower extremities. Dkt. #6, p. 540. The following month, an EMG and nerve conduction study produced normal results with "no evidence consistent with right lumbosacral radiculopathy or plexopathy." Dkt. #6, p. 568, 630.

On May 6, 2020, plaintiff was seen at University of Buffalo Neurosurgery with an updated lumbar MRI. Dkt. #6, p. 669. Although he continued to report right lower extremity radicular pain, the physical examination showed that he was able to rise from a seated to standing position independently; his gait was within normal limits; his lower extremity strength was 5/5 in all muscle groups; and he did not exhibit any tenderness to palpation of the thoracolumbar or paraspinal musculature. Dkt. #6, p. 669.

In addition, the MRI was reported to show "no evidence of recurrent disc herniation or nerve compression." *Id.*

In June 2020, plaintiff again reported lower back pain. Dkt. #6, p. 588. On examination, the doctor noted that plaintiff walked with a normal gait and had normal spinal contour, but that he had tenderness in his right lumbosacral segment and severely limited range of motion with pain. Dkt. #5, p. 589.

In August 2020, plaintiff was seen again for lower back and leg pain. Dkt. #6, p. 604. The examining physician assistant noted no signs of acute distress, but that plaintiff indicated discomfort with movement "by facial grimace and rubbing of body area." Dkt. #6, p. 605. However, a physical examination showed no radicular symptoms on seated straight leg raises; plaintiff was able to stand on his heels and toes on both legs with mild hand support; and he had 5/5 strength in both legs. Dkt. #6, p. 606.

Plaintiff was then seen in September 2020 for a follow-up and consideration of a medication refill (oxycodone). Dkt. #6, p. 648. While plaintiff reported continued lower back pain, seated straight leg raises were negative bilaterally for radicular symptoms. Dkt. #6, p. 650.

Finally, in late 2020 and early 2021, plaintiff exhibited minimal tenderness at the thoraco-lumbar paraspinal areas; seated straight leg raises were negative for radicular symptoms; he was able to stand on his heels and toes on both legs without support; his lower extremity strength was 5/5 on both left and right; and he had normal muscle tone bilaterally. Dkt. #6, pp. 653-654, 658-659, 663-664.

In addition to this evidence, the record reflects that plaintiff consistently had generally intact muscle strength in his lower extremities. Dkt. #6, pp. 270, 320, 329, 467, 610, 615, 619, 628, 633.

Substantial evidence thus shows that plaintiff's symptoms relevant to Listing 1.04(A) "waxed and waned" and were "scattered" over the course of his longitudinal medical history. *Julie Ann. P.*, 2023 WL 6056460, at *2-3 (citations and internal quotation marks omitted).[4]

Next, plaintiff's reliance on *Beers v. Comm'r of Soc. Sec.*, 449 F. Supp.3d 96 (W.D.N.Y. 2020), is misplaced. First, the Court there again recognized that an ALJ's unexplained determination that a claimant does not meet a listing at step three may be upheld where the record otherwise contains substantial evidence supporting that conclusion. *Id.* at 100 (citation omitted).

Second, the record in that case contained evidence that plaintiff experienced symptoms consistent with all the Listing 1.04(A) criteria on a consistent basis for three years. *Id.* at 103. The record here contains no such evidence.

Therefore, because the ALJ's decision, viewed as a whole, demonstrates that the evidence did not show that plaintiff's back problems met the conditions in Listing 1.04(A) at all pertinent times, the ALJ did not err at this step of the analysis. *See Casillas*, 2020 WL 4283896, at *6 ("Because Plaintiff has failed to make at least a colorable case

---

[4] Plaintiff's failure to demonstrate sustained motor loss alone places him outside this listing. *Hunt v. Astrue*, No. 07-CV-1029, 2009 WL 3076209, at *7 (N.D.N.Y. Sept. 23, 2009). "Motor loss" can be shown by evidence of muscle atrophy or weakness, *id.*, or the inability to walk on the heels or toes, to squat, or to arise from a squatting position. *Casillas*, 2020 WL 4283896, at *5 (citations omitted). As the above discussion illustrates, plaintiff cannot show that he consistently demonstrated such weakness or inability.

that he meets or equals the requirements of Listing 1.04(A), the ALJ's failure to provide a more fulsome explanation is not error requiring remand.").

### *Dr. Schwab's Opinion*

Plaintiff next argues that the ALJ erred in finding "not fully persuasive" the opinion of consultative internal medicine examiner Dr. John P. Schwab. Dkt. #8-1, pp. 16-21. The Court disagrees.

Dr. Schwab examined plaintiff on February 26, 2020. Dkt. #6, pp. 488-490. After recounting plaintiff's medical treatment following his ATV accident, Dr. Schwab noted the following: plaintiff appeared to be in no acute distress; his gait and stance were normal; he could walk on his heels and toes without difficulty; he could fully squat; he used no assistive device; he needed no help to change for the exam or to get on and off the examining table; and he was able to rise from a chair without difficulty. Dkt. #6, p. 489.

Dr. Scwhab then noted that plaintiff had full flexion, extension, lateral flexion, and full rotary movement bilaterally in his cervical spine. *Id.* He also stated that plaintiff had no scoliosis, kyphosis, or abnormality in his thoracic spine. *Id.* As to plaintiff's lumbar spine, Dr. Schwab reported that plaintiff had 60˚ flexion, 10˚ extension, full lateral flexion bilaterally, and full rotary movement bilaterally. *Id.*

Dr. Schwab also noted that plaintiff had only 20˚ standing straight leg raising, full sitting straight leg raising, and full range of motion in his shoulders, elbows,

forearms, wrists, hips, knees, and ankles. *Id.* Finally, Dr. Schwab stated that plaintiff had 5/5 strength in both his upper and lower extremities, as well as 5/5 grip strength. Dkt. #6, pp. 489-490.

Notwithstanding these largely normal findings, Dr. Schwab opined that plaintiff "has marked restriction to bending, lifting, [and] carrying heavy objects." Dkt. #6, p. 490.

The ALJ found this opinion "not fully persuasive," and he explained why. Dkt. #6, p. 24. First, he noted that plaintiff's contemporaneous medical records did not support such limitations. *Id.* Second, he found the term "marked" vague and noted that Dr. Schwab did not identify his proposed limitations with more specificity. *Id.*

However, the ALJ found Dr. Schwab's opinion more persuasive to the extent that he did not find plaintiff limited in sitting, walking, or standing. *Id.*

After reviewing Dr. Schwab's opinion, as well as the opinions of prior state agency reviewers who opined that plaintiff could perform light work, the ALJ determined that plaintiff had the RFC to perform light work with some postural limitations. *Id.*

In his brief, plaintiff asserts that the ALJ "relied on selectively chosen evidence." Dkt. #8-1, p. 18. This assertion is not supported by the record, and, moreover,

it is plaintiff who selectively plucks portions of the record to argue that the ALJ's RFC is not sufficiently restrictive. Dkt. #8-1, pp. 19-20.

However, "it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position." *Matthew P. v. Comm'r of Soc. Sec.*, 22-CV-00550-MJR, 2024 WL 4815158, at *5 (W.D.N.Y. Nov. 18, 2024) (citation and internal quotation marks omitted). Instead, plaintiff "must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*

For all these reasons, the ALJ must be affirmed.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied, the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         December 11, 2024

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**